Jones et ux., Appellants, *v.* Crossgates, Inc.

428

Argued November 9, 1971. Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CER-
CONE, JJ. (SPAULDING, J., absent).

*Samuel L. Rodgers*, with him *Rodgers and Roney*,
for appellants.

*Robert L. Ceisler*, with him *Patrono, Ceisler, Ed-
wards & Pettit*, for appellees.

*Robert L. Ceisler*, with him *Roy F. Walters, Jr.*, and
*Brandt, McManue, Brandt and Malone*, for appellee.

OPINION BY JACOBS, J., March 24, 1972:

These appeals are taken from an order sustaining
preliminary objections filed by defendant, Crossgates,
Inc. No further action was taken by the court below
and, after analysis of the pleadings, we find the order
interlocutory and quash the appeals.

Plaintiffs purchased a house and lot from Cross-
gate, Inc., a residential developer. The deed to the
property was delivered to plaintiffs on June 10, 1966.
Because of alleged defects in the construction and an

unfortunate flooding of the property, occurring after plaintiffs were in possession, plaintiffs brought three suits, two in assumpsit and one in trespass. All three complaints averred that plaintiffs and Crossgates, Inc. entered into agreements of sale on or about February 6, 1966, and March 19, 1966, under which plaintiffs agreed to purchase a house being constructed by Crossgates. In the first assumpsit complaint, filed below to No. 68 March Term, 1969, plaintiffs claimed that Crossgates had impliedly warranted that the house would be reasonably fit for use as a private dwelling and that it would be constructed in a good and workmanlike manner. The complaint further alleged the existence of numerous defects in the house, constituting a breach of those warranties. In the other two complaints, plaintiffs averred that a flood of water, mud, and debris occurred on August 19, 1967, which seriously damaged their house. In the assumpsit complaint, which was filed to No. 220 May Term, 1970, the plaintiffs recited the same two implied warranties stated in the first assumpsit complaint and additionally claimed there had been an implied warranty that the house would be constructed in accordance with the applicable ordinances of the Township of Peters. The trespass complaint was filed to No. 221 May Term, 1970. The first count joined Crossgates, Inc. and the Township of Peters as defendants. It alleged negligence on the part of Crossgates in regard to drainage and construction, and negligence on the part of the township in permitting connections to the sewer system in violation of its rules and regulations, in accepting an inadequate storm-sewer system from Crossgates, in installing an improper metal grate over the sewer system, and in failing to inspect the sewer system. The second count was against Crossgates only, claiming strict liability on the part of Crossgates as a builder-vendor.

The township filed an answer to the last complaint. Crossgates filed preliminary objections to all three complaints and it was those objections which the court below sustained. Crossgates demurred to No. 68 March Term, 1969, on the ground "that there is no implied warranty in the sale of a dwelling house sold under the circumstances applicable in the instant case." To No. 220 May Term, 1970, Crossgates demurred on the same ground and also alleged the pendency of a prior action, to wit, No. 68 March Term, 1969. Crossgates demurred to the allegation of strict liability in No. 221 May Term, 1970, on the basis that there is no strict liability in such a situation.

In its opinion the lower court held that the theory of implied warranty of fitness for a particular purpose should not be applied to a dwelling or any other realty and that the doctrine of strict liability does not apply to the purchase of homes. The court recognized that in building contracts there is an implied agreement on the part of the seller-builder that his construction shall be done in a workmanlike manner and that defendants would be liable for negligence in construction. The court said nothing about the intended effect of its order on the various complaints.

The appealability of an order goes to the jurisdiction of the appeals court and may be raised by the court sua sponte. *McGee v. Singley,* 382 Pa. 18, 114 A.2d 141 (1955). "As a general rule, an order which sustains preliminary objections in the nature of a demurrer without dismissing the complaint or entering judgment or otherwise terminating the action between the parties is interlocutory and, therefore, lacks the requisite finality to be an appealable order. Where, however, the order does, in effect, terminate the action between the parties, or so restricts the pleader with respect to further amendment of his complaint as virtually to put him out of court on the cause of action he seeks to

litigate, it is a definitive and final order and, thus, appealable. *Sullivan v. Philadelphia,* 378 Pa. 648, 649, 107 A.2d 854 (1954) ; *Local No. 163, Int'l. Union etc. v. Watkins,* 417 Pa. 120, 122, 207 A.2d 776 (1965)." *Hudock v. Donegal Mut. Ins. Co.,* 438 Pa. 272, 276, 264 A.2d 668, 671 (1970).

We are compelled to conjecture as to the exact effect of the court's order. Are the plaintiffs out of court on all claims except those based on negligence? Or are they still in court on their assertion of an implied warranty that the house would be constructed in a good and workmanlike manner? Was it possibly the intention of the court that the plaintiffs would be permitted to amend in any respect? The court below does not mention the alleged warranty of compliance with township ordinances. Under these circumstances we are unable to determine the effect of this order on the plaintiffs. The order cannot be considered definitive and final until further action is taken by the court below.

Appeals quashed.